CIRILO NIEVES, Plaintiff and Appellant, *v.* WHITE STAR BUS LINE, INC., Defendant and Appellee.

No. 6239. Argued November 21, 1934.—Decided November 21, 1935.

Diego O. Marrero and A. Quirós Méndez for appellant. Henri Brown, C. Ruiz Nazario, G. E. González, and G. Benítez Gautier for appellee.

Mr. Justice Wolf delivered the opinion of the court.

An accident occurred. The plaintiff maintained that he was on board a jitney of the White Star Line when the accident happened, in other words, a passenger. The defendant introduced evidence tending to show that the plaintiff was never on the jitney and that the accident happened to him by reason of his striking a telephone pole while wandering in a fit of abstraction near the place where the bus was passing.

In point of fact one of the principal witnesses of the defendant was an insular policeman. He gave a detailed account of what had happened. While there was considerable testimony on the part of the plaintiff and his witnesses that the accident happened while the plaintiff was alighting from the bus, the trial judge resolved the conflict against the plaintiff. The policeman was not the only witness of the defendant, but he was a very important one.

The plaintiff offered in evidence a communication made by the district chief to the chief of police at the time of the accident. The contents of the document were as follows:

"1.—At 11:05 a. m. of the 7th inst. and at José Martí Avenue, Santurce, jitney plate No. 76, owned by the White Star Line, Inc., San Juan, insured with the Porto Rican and American Insurance Co. and driven by chauffeur David Camerón, license No. 29863, of 44 Europa Street, Stop 22, ran over Cirilo Nieves, of Cantagallo

Street, Santurce, completely fracturing the femur of his left leg at its middle third, causing him wounds and bruises in different parts of his body, of uncertain prognosis. He was confined in the hospital.

"2.—Policeman Ramón Izquierdo, plate No. 233, who was present, and the witnesses, José Ocasio, of Tren Street, Stop 4, Puerta de Tierra, and Ramón Bonilla, of No. 13 William Street, Barrio Obrero, state that the accident took place while the injured person was walking towards Stop 44 along the right-hand side, looking behind and collided against a telephone post. He fell to the ground, crosswise to the street, and was caught by a jitney going in the same direction which overtook him at that moment.

"3.—The facts were submitted to the Judge of the municipal court, first section, who acting as a committing magistrate charged defendant David Camerón with an infraction of section 12 (c) of the Automobile Law, fixing bail at $1000."

On the witness stand the policeman Izquierdo testified that this report was a copy of the one that he had made in the blotter (*libro de novedades*). The plaintiff objected substantially on the ground that the witness had not stated that the copy presented was a faithful copy of the entry in the *libro de novedades;* that it was only a copy of a report made to the insurance company by the chief; that it was not a literal copy of the entry in the blotter or duly certified by the person in charge of the said book or blotter.

The objection was perhaps colorable. The situation before us however is not the ordinary case of proving the contents of an official document by a certified copy or a case where the contents of a document are an essential element in an issue of the case. The theory of the district judge in admitting it was that it helped to corroborate the testimony of the policeman as to the report made by him on the day of the accident. The policeman himself, as he testified, had made the entry in the blotter and in effect he was saying that the document before him was a copy of what the blotter, as entered by him, contained.

As the appellee points out, this is not the case where a certificate is presented and there is no opportunity to inves-

tigate the origin of the same, but here the policeman was put on the stand, gave testimony of the details of the accident and said that he had made the entry. The plaintiff had a full opportunity to cross-examine the witness, both as to the details of the accident and as to the entry actually made. We find no error.

If any error there was, it was harmless because of the coincidence of the report with the testimony and the undisputed testimony that the entry was made.

■ The appellant complains of other errors but all may be considered to be involved in the undue weighing of the evidence by the court. Several eyewitnesses, or supposed eyewitnesses, say that the plaintiff was a passenger, and others say he was not, among them the policeman as aforesaid.

Now the court is not required, as suggested by the appellant, to give a complete picture of the manner in which it resolved the conflict. There may be one or more witnesses for the plaintiff and one or more witnesses for the defendant and most frequently it would be impossible for the court to give its reasons why it believed one set of witnesses rather than another. In *Deliz* v. *Deliz*, 40 P.R.R. 72, 74, we said:

"Another assignment of error is the failure of the court to make more specific findings. The court said the charges of the complaint had been proved and that the case was one of conflict in the evidence. It is apparent from the opinion that the court believed the testimony offered by the complainant. The Act passed by the Legislature in 1925 says that in cases of conflict the judge should express the reasons for his arriving at a result. When it appears that the court believed one set of witnesses rather than another little more can be required. We do not think that it was the intention of the Legislature that the judge should say that because of a witness's words, attitude or gestures he did not merit credit and we doubt if the Legislature has the right to exact such minute requirements of a judge. Be it as it may, the question arises as to what this appellate court should do in case of default by the judge. Should we send the case back for a new trial or many months after the trial

require the judge to disclose all his intimate ideas? We hold otherwise. Frequently the trier could not tell all his reasons for arriving at a conclusion of fact. A certain amount of intuition is involved in the process. Furthermore, the appellant made no request for other findings. This, like the failure to require better or corrected instructions in criminal cases, is a waiver by a losing party or something similar.''

Again in *Franqui* v. *Fuertes Hermanos, S. en C.,* 41 P.R.R. 221, we said:

''So far as section 227 is concerned, not only did the defendant fail to set forth an assignment of error in regard thereto, but he similarly failed to ask the court to make any further analysis than was done in this case. We have intimated before that it would be impossible for a court to give all the reasons why it believed or disbelieved a particular witness or set of witnesses, and an unremembered gesture might cause a conviction in the mind of the judge.''

The appellant in his brief takes extracts from the statements of his witnesses. He insists that the testimony of these witnesses and specially of the plaintiff show a definite prima facie case, if not a preponderance of the evidence in favor of the plaintiff. Of course, the trier of a case has the right to question even undisputed testimony although this should be done with great care. But where there is a conflict, it is more readily possible that a judge may not believe any of the statements of the witnesses for a plaintiff. Then, of course, it can make no great difference that the evidence of the plaintiff, if believed, tends strongly to prove his case.

We have given a little closer attention to the attack made on the testimony of the policeman and the witness Bonilla who was the starter where the accident took place. It was on Loíza Street immediately east of where the trolley on Park Street crosses it. The starter Bonilla was located on the sidewalk to the west of the track, while the policeman was located on the street immediately next to him. The plaintiff fell against the post at a distance, we may estimate, of some seventy-five feet.

The testimony of each of these two witnesses is that the plaintiff was coming from the east when he was struck by the jitney after stumbling against the pole and falling. The appellant strongly insists that neither Izquierdo, the policeman, nor the starter could have seen the plaintiff from their respective positions because there was another pole of the trolley company that would intercept the view. We do not find from the testimony or the photographs that the jitney actually prevented a view.

So far as the possibilities of observation by the starter are concerned, there is a little force in the contention of the plaintiff, but he does not convince us from the photograph that the starter could not have seen all of that to which he testified. With respect to the policeman, who is the principal witness and largely relied upon by the court, we find nothing in the location of the policeman which would have prevented his complete observation of the accident. The photograph shows that the two posts are not in the line of vision of any one standing on the west sidewalk and especially not of a person standing in the street. The testimony of two other witnesses tends to support Bonilla and Izquierdo.

The judgment should be affirmed.